## CLAPP v. MESEROLE.

September, 1864.

Affirming 38 *Barb.* 661.

A surrogate's decree against executors who are indebted to the estate of their testator, requiring them to pay legacies due from the estate, whether made before or after their removal from the executorship, is not, without payment, satisfaction of the legatee's claim against the estate, but the sums due remain undistributed assets.

Clapp *v.* Meserole.

A judgment does not extinguish the original claim on which it was recovered, if it was recovered, not against the principal debtor, but against one standing in the position of a surety.

An administrator with the will annexed, appointed on the removal of executors, may enforce a decree made on the accounting against such executors.[*]

Legatees who are also executors, cannot, by assigning the legacy, give the assignee a right to enforce payment discharged from abatement for advances, or for assets misapplied, or debts due from them to the estate.

Everett Clapp, individually and as administrator with the will annexed of Simon Richardson, deceased, filed a petition in the supreme court, against Grace C. Meserole and others, to have a review of a decree made by the surrogate, on the final accounting of Clapp, the petitioner, as such administrator.

The testator's will left one-third of his personal property to his wife, and the residue, in six parts, to five children, and the children of a deceased daughter; and devised his real estate (after certain life interests in the income) to his executors, in trust, to sell it and divide the proceeds, like the personalty.

The will also provided, that whereas testator had made advances to some of the children (among others, ten thousand dollars to William and Stephen, his two surviving sons), these advances should be included in computing the amount to be divided, and should be respectively deducted from the shares of those to whom such advancements had been made.

The sons, William and Stephen, took out letters testamentary in 1850, soon after the testator's death, and assumed the duties of executors.

Others, who were included in the letters as first issued, ceased to be executors, by death or revocation. On May 12, 1856, Stephen and William assigned all their interest in the estate to persons, through whom Everett Clapp became the owner of such interest. In 1859, Everett Clapp, as owner thereof, obtained a surrogate's order that the executors account ; whereupon Stephen petitioned for a final accounting under the stattute, and on due process and a hearing, their accounts were settled and a decree for distribution was thereon made.

Including the advancements above mentioned, and also a

[*] Compare Clark *v.* Ford, p. 359 of this vol. ; and Walton *v.* Walton, also reported in this series.

Clapp *v.* Meserole.

sum of over eight thousand dollars, due from the executors to the estate for a deficiency on foreclosure of a mortgage made by them to the testator in his lifetime, the total amount to be distributed was found to be fifty-five thousand three hundred and twenty-seven dollars and twenty-six cents, making six shares of nine thousand two hundred and twenty-one dollars and twenty-one cents each.

The surrogate therefore made a decree June 1, 1861, by which Stephen and William, being each chargeable with ten thousand dollars as advances, were not awarded anything as beneficiaries under the will, but as executors, were ordered to pay the other legatees certain sums specified.

On October 14, 1859, pending these proceedings, Stephen and William were removed from the office of executors, by an order of the surrogate, and on December 30, following, the present appellant, Everett Clapp, was appointed administrator with the will annexed, and under his administration the proceedings on the accounting went on, and the decree for distribution, above mentioned, was made. On July 31, 1861, he applied to the surrogate for a final accounting, and upon that application it appeared that the balance of the sums which had come to the hands of Clapp, to be distributed to the beneficiaries under the will, was eight thousand eight hundred and nine dollars and twenty-six cents. The former executors had not paid the several amounts directed to be paid by them by the former decree. The surrogate decided that the appellant was not entitled to any portion of the sum to be now distributed, as Stephen and William Richardson were indebted to the estate for more than the amount of their shares, which they had assigned to Clapp.

*The supreme court,* on appeal, held that the decree, on the Richardsons' accounting, although it contained a clause requiring them to pay the respective balances to the distributees, thus giving a remedy against them personally, did not amount to a satisfaction or extinguishment, so as to exonerate the fund and leave the claim simply a personal charge against them; but the remedy was cumulative, and did not impair the remedy against the fund; citing in illustration Chapman *v.* Martin, 13 *Johns.* 240. The court accordingly affirmed the decree, but

for greater safety further ordered that the sum of the first decree ordered to be paid by Stephen and William Richardson, should be considered undistributed assets of the estate of the deceased, and that the parties interested in that estate, or any of them, should be at liberty, at any time, to apply to the surrogate for further directions in respect thereto. From the judgment of the general term the administrator Clapp appealed to this court.

*J. C. Smith*, for the appellant.—There was no privity between Clapp and the Richardsons, and he could not enforce the decree against them. 2 *Wms. on Ex.* 781; Hagthorp v. Hook, 1 *Gill & J.* 271; Coleman v. McMurdo, 5 *Rand.* 51. The modification made by the supreme court, on the appeal, was without authority, and erroneous. Hard v. Shipman, 6 *Barb.* 621; Wesson v. Chamberlain, 3 *N. Y.* (3 *Comst.*) 331.

*J. L. Campbell*, for the respondent.

BY THE COURT.—DENIO, Ch. J.—It is not claimed that there was any error in the decree of the surrogate, so far as the settlement of the appellant's accounts as administrator are concerned. He does not complain that he was charged with any greater sum than that which had come into his hands, or that any allowances to which he was entitled were rejected. But, as the assignee of the testamentary gifts in favor of Stephen and William Richardson, he was interested in the distribution of the balance in his hands as administrator, and the supposed error of which he complained affects only his interest as such legatee. In that character he represents the Richardsons, and can claim no other rights than they would have been entitled to if they had not parted with their interests, but were now the claimants of a share of the assets distributed by the decree appealed from. As legatees, they were chargeable, in the first instance, with ten thousand dollars each for advances made to them by the testator in his lifetime, and it is not contended by the appellant that they, or he, as their assignee and representative, would be entitled to anything until the legatees of the other four shares had each been paid an equal amount,

that is, ten thousand dollars on each share. But, upon stating an account with each of the other shares, and charging the legatees with the advances made to two of them, and charging them respectively with all which had been paid them by the executors, it would require much more than the amount in the appellant's hands for distribution to make the payment to each of them equal to the ten.thousand dollars which each of the appellant's assignees had received, or, rather, were chargeable with in the.outset. The appellant's position, therefore, is that the sums adjudged to be paid to these other legatees by the former decree should be considered as having been actually paid, and as extinguishing their legacies to that amount. By adopting that view, they would still each have received considerably less than the ten thousand dollars which each of the Messrs. Richardson was chargeable with ; but if enough of the balance in the appellant's hands were applied to make the other five legacies ten thousand dollars each, there remains a surplus divisible among the legatees of the whole six shares, in which the appellant would be entitled to participate as the assignee of the two shares.

When it is considered that the legatees of the four shares given to persons other than the Messrs. Richardson have not been paid any part of the sums adjudged to them by the former decree, and that the failure to pay them arose from a breach of trust on the part of the Messrs. Richardson, and, moreover, that the appellant, as their assignee, stands precisely in their place, and has no other rights than such as they would have had if they had retained their interests and had been parties to the distribution of the sum now in controversy, his claim seems to be remarkably defective on the grounds of natural equity. If it can be sustained at all, it must be on account of some positive rules of law which the court is not liberty to disregard, and it is accordingly attempted to be supported on such grounds.

It is argued, in the first place, in substance, that the decree is in the nature of a judgment, which ordinarily merges and extinguishes the cause of action for which it was recovered. The right to the four legacies having been thus extinguished *pro tanto*, they cannot, it is said, be made use of, as to the portion

Clapp *v.* Meserole.

so extinguished, to found a future claim upon other assets subsequently realized. There is, no doubt, a technical rule of the nature suggested, but I do not think it is applicable to this case. When the decree was made against the Messrs. Richardson, they had ceased to be executors, having been removed by an order of the surrogate. It was correct, I think, to continue the proceedings against them, notwithstanding their removal. They were parties who, by means of their former position as executors, had got into their hands the assets of the deceased, and one of them had, before his removal, applied, on his own behalf, for an accounting respecting the trust. But if this were otherwise, and if the proceedings ought to have ceased when the executors were removed, it would not add to the effect of the decree. If it were void for that reason, it would not, of course, affect the rights of the legatees, in whose favor amounts were adjudged. But considering it, as I do, an effectual adjudication, and binding upon the parties charged, it was not a judgment against the estate, or against parties representing the estate. That was then represented by the appellant, and the Richardsons were third persons, who were accountable to the estate for moneys which they had received belonging to it, and which it was their duty to pay over to the parties to which it belonged. The remedy against them was, therefore, collateral to the claim of the legatees against the estate. The estate, or its then representative, was their principal debtor. Anything which they could obtain by means of this collateral remedy would be applicable to their demands upon the estate. But should they fail to obtain anything, their claim against the estate would not be impaired. The doctrine of extinguishment by judgment has no application where the judgment is not against the principal debtor, but against one collaterally liable. In such cases, both a judgment and satisfaction are required to affect the principal debt.

It is suggested that the first decree may possibly be enforced hereafter so as to produce satisfaction, and that in such an event the holders of the four shares will get a larger part of the estate than they are entitled to. The same feature would always be presented where a collateral security is carried to judgment.

Should the debt be afterwards paid by the principal debtor, it would not be right for the creditor to take the fruits of the judgment upon the collateral security, and the law would not permit him to do so. After payment by the party principally liable, he would be entitled to be subrogated to the rights of the creditor upon the collateral judgment, and such creditor would be declared a trustee for his former debtor.

It is argued that the appellant, the present representative of the estate, is not entitled to enforce the former decree for want of privity with the subject, and authorities are cited in support of that position. We have lately had the question before us whether an administrator *de bonis non* was entitled to maintain an action against a representive of an executor who had died without applying the assets which had come to his hands, including moneys which he had collected, and came to the conclusion that under the statutes the administrator could maintain such an action. Walton *v.* Walton, reported in this series. That decision answers the suggestion referred to.

It is further argued that the surrogate, in making the decree appealed from, charged against the shares given to the Richardsons, and which were held by the appellant, the amount awarded against them by the former decree, as effects of the deceased wasted. The point of the objection is, that they disposed of their property in the legacies to them anterior to the *devastavit*, which is not a matter with which the appellant is concerned. It is a sufficient answer that these legatees after the death of the testator became possessed as executors of all his personalty, and under trusts of the will were entitled to receive the rents and profits and proceeds of the sales of the whole real estate. Being both executors and legatees, the realization of their legacies depended upon the faithful performance of the trust, and it was not possible for the legatee to separate the interest from the duty. They could not convey away the former and then waste the assets with which it should have been paid. The duty which attached to the legacy in the hands of the legatees, followed it into the hands of the appellant.

The same remarks are applicable to the sum charged against

the legacy to the Richardsons, on account of their indebted-nesss to the estate for the deficiency arising upon the sale of the mortgaged premises under the foreclosure of a mortgage.

That was a part of the debt owing by them to the testator at the time of his death. The proceeds of the sale on the fore-closure had not been realized at the time of the last account-ing. After the change, by which the appellant was substituted for the executors as the representative of the estate, the appel-lants realized a certain amount, and the balance of the mortgage debt became absolutely chargeable against the Richardsons, the mortgagors. But the whole debt was coeval with the legacy, and the full payment of the debt was an equitable condition to the receipt by them of their legacies. This condition accompanied the legacies into the hands of the appellant.

In the view I have taken of the case I have impliedly con-ceded certain positions which may well be controverted. By laboring to show that the first decree was in its nature col-lateral to the demand of the legatees against the estate, because it was against parties who were not executors, I have assumed that if this were otherwise the appellant's point, that the lega-cies were extinguished *pro tanto,* would be well taken. If the accounting had taken place while the Richardsons had remained executors, and they had been unable to pay the amounts award-ed against them because they had misappropriated the assets with which it ought to have been paid, and other assets had subsequently come into their hands, it is not possible that they could have treated the unsatisfied judgments against them in favor of the other legatees, as payments to those legatees, and on that basis have claimed a distributive share of subsequent assets, leaving the other legacies unpaid. The correct view, even in such a case, would be to regard the estate as the prin-cipal debtor, which could not be discharged except by actual payment, and to look upon the judgment against the executors as auxiliary only, not affecting the principal debt,—that is, the legacies to the daughters and grandchildren,—unless they be-came satisfied by producing payment, and in no sense an ex-tinguishment; and if the executors could not set up such a position to increase their own dividend as legatees out of

24

the after-acquired assets, no person claiming title under them could do it.

The saving which the supreme court added to the decree was a suitable provision, though not, I think, strictly necessary to preserve the rights of the legatees in any moneys to be afterward realized as under the first decree. I am satisfied that the judgment of the supreme court ought to be affirmed.

All the judges concurred except H. R. SELDEN, J., who was absent.

Judgment affirmed, with costs.