and after the payment of the costs and allowances hereinafter men-tioned, the surplus may be distributed as provided by the stipulation.

I am unable to gather from the evidence anything upon which a personal liability against the defendant Armbrust can be sustained. The claims of all the parties to this effect against him were withdrawn upon the trial, except on behalf of the plaintiff and of the defendant Raymond; but counsel for neither of these parties has pressed this question in his brief, and I conclude that each has reached the same conclusion in this respect as was announced by the other parties on the trial.

Decision and judgment may be prepared in harmony with this opinion, with costs to the plaintiff, and an extra allowance of $750 in lieu of the amount of counsel fees stated in the stipulation, with costs to the Twelfth Ward Bank and an extra allowance of 5 per cent. on the amount of its claim, with costs to the defendant Armbrust and an extra allowance of $100, and with an allowance by way of costs to the several parties joining in the stipulation, other than the plaintiff, in the amounts therein stated, in lieu of the counsel fees therein agreed upon; all such costs and allowances to be paid out of the fund. Settlement may be had upon the usual notice.

Judgment accordingly.

(64 App. Div. 346.)

### In re BURDSALL et al.

(Supreme Court, Appellate Division, Second Department.  October 4, 1901.)

1. WILLS—CONSTRUCTION—CHARGES AGAINST DEVISEES.

Testator directed that whatever was found charged on his books against either of his children was to be deducted from their shares.  On his books was an account against his daughter, showing no balance against her; but a prior account in her maiden name showed a balance against her.  Nearly the full amount of such balance was caused by the purchase of a house, which he gave to his daughter as a wedding present.  Directly beneath the account showing such balance red lines were drawn, and a new account with the daughter in her married name was opened.  *Held*, that the balance against such daughter in her maiden name was not a charge to be deducted from the share given to her and her children.

2. SAME.

Where testator directs that any charges on his books against devisees are to be deducted from their shares, and on such books are charges for stock at its par value, such value only, and not its actual value, must be deducted.

Appeal from surrogate's court, Westchester county.

Proceedings in the matter of the judicial settlement of the account of Ellwood Burdsall and another, as executors of the will of Ellwood Burdsall, deceased.  From a decree the executors, individually and as executors, and Elizabeth W. Griffen and another, minors, by their guardian, J. Mayhew Wainwright, appeal.  Affirmed.

Argued before GOODRICH, P. J., and WOODWARD, HIRSCHBERG, JENKS, and SEWELL, JJ.

Isaac N. Mills, for appellants Burdsall.
J. Mayhew Wainwright, for minor appellants.
Arthur C. Palmer, for respondent Anna B. Griffen.

HIRSCHBERG, J. We consider it necessary to determine only the questions which have been presented on the argument and in the briefs. Of these the serious question is whether the trust share is to be reduced because of charges made by the testator upon his books against the life tenant.

The estate of the testator exceeds a half million dollars. By his will, dated June 22, 1889, he bequeaths to his wife his household furniture, etc., and also gives to her absolutely the one-third part of all the remainder of his estate. He directs that the residue of his estate shall be divided into three equal parts. One of these parts he gives to each of his two sons. The remaining one-third of such residuary estate he gives, to quote the language of the will, "to my executors hereinafter named, and to the survivor or survivors of them, in trust, nevertheless, to receive the rents, issues, and profits of the real estate, if any, and to sell and convey the same, or any part thereof, on such terms as they may think proper; to purchase other real estate, to be held subject to this trust, with the proceeds of such sale or sales, or with other trust funds; to invest the personal property of said one-third, if not invested, and to hold the same at their discretion; and to pay the interest and income thereof, and the rents, issues, and profits of the real estate, if any, to my daughter, Anna B. Griffen, so long as she may live, and upon her decease to pay the said one-third part to her children, in equal parts, as they shall severally attain the age of 21 years; and, until each child shall attain the age of 21 years, such child shall be paid its share or proportion of said interest or income of the said one-third of my estate given in trust as aforesaid." The sixth clause of the will, which creates the controversy, is as follows:

"I order and direct that whatever shall be found charged on my books against either of my children shall be deducted (but that no interest be charged thereon) from their shares, respectively."

The testator died December 28, 1889, leaving, him surviving, his widow, his two sons, his daughter, and her two minor children. On his books is an account under the name of each of his sons, and in each account is charged the sum of $14,150, representing stock and other property received by each from his father during the latter's lifetime. There is also an account under the name of the daughter, Anna B. Griffen, showing no balance charged against her, and also a prior account under her maiden name, Anna C. Burdsall, upon which it is claimed a balance does stand charged against her, amounting to $21,000, and consisting of two items,—one of $20,000 for a house in the city of New York, and the other of $1,000 for ten shares of stock. The learned surrogate has found, in substance and effect, that this account does not contain a charge against Mrs. Griffen, within the meaning of the sixth clause of the will, and we approve of that finding.

The stock was purchased by the testator, but the certificate was taken in his daughter's name. It remained in the possession of the testator until his death, but the executors (the two sons) have since voluntarily delivered it to their sister. No question is seriously raised as to the title to this stock, and whether it represents a charge

or not must be determined in connection with the $20,000 item, as both items are in the same account, and apparently stand on the same footing. The $20,000 was expended by the testator in the purchase of a house in New York, which he intended to, and which he did, give to his daughter as a wedding present. There does not appear to have been any other wedding present given by the testator. The cost of the house was not beyond his means and station in life, and the suggestion that his daughter should repay him for such a present seems unnatural and repugnant. She was married on December 13, 1883. She was then a minor. The purchase was made October 1, 1883; the title being taken by the testator in his own name, and so remaining at the time of his decease. But immediate possession of the property was delivered to the daughter. She and her husband have lived there ever since. Their children were born there. She has paid the taxes and a considerable sum of money in permanent, substantial improvements, all with the knowledge of the deceased, and all resulting in the acquisition by her of a title to the property, valid and enforceable in equity. Freeman v. Freeman, 43 N. Y. 34, 3 Am. Rep. 657; Young v. Overbough, 145 N. Y. 158, 39 N. E. 712.

The account with the daughter under her maiden name was opened some years before her marriage, but the house item was not entered on it until January 1, 1885. On that same date the balance of $21,000 was brought down in the account, and directly beneath it two red ink lines were drawn across both sides of the account. The new account with the daughter under her married name, and which, as has been said, exhibits no charge at the time of the testator's death, was then opened on the same page, directly beneath the red lines, and comprised the only account in which entries were thereafter made relating to her. The apparent closing of the old account by the testator by the act of drawing red lines against it, and the opening of the new account, without the entry of any charges for the items in question, are acts quite significant of an intention not to include such items within the scope of the sixth clause of the will.

The precise items of that clause add force to this conclusion. The deduction is to be of "whatever shall be found charged on my books against either of my children"; an expression which, while sanctioned by custom as importing one of many, in its precise and accurate sense implies only one of two. But the deduction is to be "from their shares, respectively." Strictly speaking, the testator gave no share of his estate to his daughter. Indeed, he gave her nothing of that which he himself had, but only certain income to be earned and acquired after his death. The trust share he gave to his executors, and, while this was to be held by them for her benefit while she lived, no one claims that the $21,000 should be charged directly upon the provision designed for her support. The claim is that the testator intended the charge to be made against the trust share as such in diminution of the principal, and so indirectly in diminution of the interest. Doubtless there are cases where such a share could be considered an entirety for such a purpose, but in this instance that construction would do violence to both the strict lan-

guage of the will and the evident intention.   Nothing is found charged upon the books against the daughter's children, and, whatever the testator may have intended, it may be reasonably assumed that he did not intend.that his grandchildren should be charged with the cost of their mother's wedding present.

It may be conceded that the testator aimed to secure equality among his children.   There is strong evidence tending to indicate it.   But it is by no means clear that the finding under consideration in any respects disturbs such equality.   The amount of the daughter's gift, it is true, exceeds the sum charged against the sons, respectively. But a large part of the stock charged to the sons is charged at only half its actual value.   They have received dividends ranging from 10 to 20 per cent., have been engaged at steady salaries in the business of their father's company, and were supported at home in good style, where horses were kept by the deceased for their use.   In view of these facts, and the fact that their shares are given to them out and out, while their sister receives only the life use of the remaining share, it cannot be said that our construction of the will works any inequality. . But. in any event we deem the language of the sixth clause, the nature and object of the purchase which the chief item in controversy represents, and the act of the deceased in closing or barring out the first account, as controlling in the disposition of the question now under consideration.

The claim is made on behalf of the infant appellants and also by the respondent that the sons' shares should be charged with the stock hereinbefore referred to at its actual, and not its par, value.   It is charged, however, on the books at the par value, and such value only therefore comes within the terms of the clause in question as being "found charged on my books."

The decree should be affirmed, with costs to each of the parties to this appeal, payable out of the general estate.   All concur.