"The question of the jurisdiction of the state to tax is one of fact and cannot turn upon theories or fictions which, as has been observed, have no place in a well-adjusted system of taxation. * * * If the property in the foreign jurisdiction was in land, or in goods and chattels, when, upon the testator's death, a new title, or ownership, attached to it, the bringing into this state of its cash proceeds, subsequently, no matter by what authority of will, or of statute, did not subject it to the tax."

To the same effect is Matter of Sutton, 3 App. Div. 208, 38 N. Y. Supp. 277, affirmed 149 N. Y. 618, 44 N. E. 1128.

The rule that the transfer tax should be imposed upon property in the form in which it stands at the testator's death has been applied to the advantage of the taxing power where the equitable conversion changed a portion of the estate from taxable to nontaxable property. Matter of Offerman, 25 App. Div. 94, 48 N. Y. Supp. 993; Matter of Bartow, 30 Misc. Rep. 27, 62 N. Y. Supp. 1000.

The order appealed from should be so modified that no tax shall be fixed upon the sum of $26,400, reported by the appraiser as additional personal property.

Decreed accordingly.

---

(67 Misc. Rep. 363.)

## In re BENNINGTON et al.

### (Surrogate's Court, Otsego County. April, 1910.)

1. DESCENT AND DISTRIBUTION (§ 98*)—ADVANCEMENTS—INTENT TO MAKE.

Where decedent's son had obtained money from his father for which he gave interest-bearing notes, and paid interest from time to time for several years until the notes were surrendered to him by his father, the transaction was a loan, and nothing showing the intent to convert the loan into an advancement, the amount cannot be set off against his share of the estate.

[Ed. Note.—For other cases, see Descent and Distribution, Cent. Dig. § 402; Dec. Dig. § 98.*]

2. DESCENT AND DISTRIBUTION (§ 98*)—ADVANCEMENTS—INTENT.

Even if the original loan to a son was intended to be an advancement, his father's subsequent conduct in returning to the son the notes he had taken, and declarations consistent with an intent to treat the notes as no longer a part of the estate, would prevent their being treated as an advancement.

[Ed. Note.—For other cases, see Descent and Distribution, Cent. Dig. § 402; Dec. Dig. § 98.*]

In the matter of the settlement of the accounts of Daniel Bennington and Bancroft F. Bishop, administrators of Robert H. Bennington, deceased. Decree rendered.

Merritt Bridges, for administrators.

Arthur W. Morse, for Elva M. Bennington, as administratrix of the estate of Samuel J. Bennington, deceased.

L. E. Walrath, special guardian for Matilda Bennington, an incompetent person.

WILLIS, S. On the final judicial settlement of the estate of the above-named decedent, it was claimed on the part of the administra-

---

tors that there should be deducted from the share of Samuel J. Bennington, passing to his administratrix, the sum of $2,381.97, claimed to have been advanced by the intestate to his said son, Samuel.

The evidence shows that Samuel had of his father $1,850, for which his father took from him two interest-bearing promissory notes; that Samuel had paid the interest on these notes from time to time for several years, down to the time when the notes were surrendered to him by his father. I do not think this evidence is capable of any other construction than that this $1,850 was in the nature of a loan. The fact that the intestate took interest-bearing notes payable to himself, received interest upon the same from time to time, and probably some of the principal, is only consistent with the theory that it was the intention of both parties to treat the transaction as a loan. Bruce v. Griscom, 9 Hun, 280, affirmed 70 N. Y. 612.

Assuming, then, that the transaction was originally a loan, is there anything in the evidence showing an intention on the part of the parent to change the indebtedness to an advancement, with the intention that the amount should be deducted from the share of Samuel in the parent's estate under the rules of law applicable to advancements? I think not. If the father intended that the share of Samuel in his estate should be charged with the amount remaining unpaid, if any, on these notes, he had only to hold the notes so that they would pass to his personal representatives, and such result would have necessarily followed. The amount of the notes would have been a legal set-off against the share of Samuel in his father's estate. But the father did not hold and retain the notes. He took them to Samuel, delivered them to him accompanied by declarations only consistent with his intention to treat the notes as no longer a part of his estate or an indebtedness against his son Samuel. I think the evidence as to what took place at the time these notes were delivered to Samuel shows beyond question that it was the intention of the intestate at that time to settle and cancel any indebtedness or obligation which he then held against his son Samuel, evidenced by those two promissory notes, and that the transaction amounted to an absolute gift, not only of the notes but of the indebtedness secured thereby.

Assuming, however, for the sake of the argument, that the original transaction at the time of the making of the notes was an advancement, instead of a loan, the acts and declarations of the intestate at the time of the surrender of the notes would clearly indicate an intention on the part of the parent to settle and cancel any obligation on the part of Samuel to repay the amount of such advancement to the estate of the parent or to have the same deducted from the share of Samuel in the estate of the parent. Webster v. Gray, 54 Hun, 113, 7 N. Y. Supp. 266; Matter of Burdsall, 64 App. Div. 346, 72 N. Y. Supp. 147.

Terms of the decree herein will be settled at a term of the Surrogate's Court of Otsego county, N. Y., to be held at County Court chambers in the city of Oneonta, Otsego county, N. Y., on the 14th day of April, 1910.

Decreed accordingly.