## In the Matter of the Estate of LOUIS SINGER, Deceased.

Surrogate's Court, Kings County, June 12, 1939.

*William Galland* [*Hyman Eller* of counsel], for Martin Singer, petitioner.

*Roe & Kramer* and *Frederick B. Dalton*, for Jacob Singer and Tillie Singer, as executors, etc., respondents.

WINGATE, S. The pertinent facts in the present controversy are undisputed. By the "fourth" item of his will the testator bequeathed a general legacy of $10,000 to his brother, Martin Singer. The "thirteenth" item reads: "I declare that all advancements that I may have made or may hereafter make to any of my children or my brother Martin Singer shall be in addition to and not in satisfaction of any legacies, portions or other benefits given them by my will."

Beginning early in 1932 the decedent gave his brother various sums from time to time. Those paid by check, which have been found and introduced into evidence, aggregate $1,190 and were represented by twenty-one checks varying in amount from ten to one hundred dollars, a majority thereof being for sums of fifty dollars or less. None was for more than one hundred dollars. None of these payments nor their aggregate is questioned, it being conceded by the executors that they constituted "advancements"

within the connotation of item "thirteenth" of the will and are not to be deducted from Martin's legacy.

The transaction which, however, is contested, had its inception on November 18, 1935, on which date Martin made a four months' note to the decedent in the sum of $816, payable at the Irving Trust Company, Woolworth Building, New York city, at which institution the decedent carried an account and Martin did not. This was discounted by the bank and Martin received the proceeds. This was renewed on March 18, 1936, with an increase to cover the interest and was thereafter renewed at four months' intervals, each time with a like increase of its face, until after the death of the testator. It was paid on March 22, 1937, upon the insistance of the bank. The money for this purpose was advanced by the executors with full reservation of all rights, it being the position of the brother that this transaction, also, was within the description of item "thirteenth" of the will, whereas the executors contended that it was not, and that it was properly deductible from the bequest to the brother under the "fourth" item. Which of these assertions is correct is the issue now presented for decision.

The subject of advancements is a well-recognized but infrequently encountered doctrine of the law of devolution of the property of a decedent. It is of purely statutory origin (*Messmann* v. *Egenberger*, 46 App. Div. 46, 49) and is stated and regulated in sections 85 and 86 of the Decedent Estate Law and section 270 of the Surrogate's Court Act. The basic theory underlying its terms is the accomplishment of equality in participation between the children of an intestate. (*Kent* v. *Hopkins*, 86 Hun, 611, 613.) To that end it is enacted that "if a child of an intestate shall have been advanced by him, by settlement or portion, real or personal property, the value thereof must be reckoned for the purpose of descent and distribution as part of the real and personal property of the intestate descendible and to be distributed to his distributees; and if such advancement be equal to or greater than the amount of the share which such child would be entitled to receive of the estate of the deceased, such child and his descendants shall not share in the estate of the intestate; but if it be less than such share, such child and his descendants shall receive so much, only, of the personal property, and inherit so much only, of the real property, of the intestate, as shall be sufficient to make all the shares of all the children in the whole property, including the advancement, equal." (Dec. Est. Law, § 85.)

It is entirely obvious from the terms of the statute that the doctrine itself as thus defined is applicable only to intestate estates and to the distributive rights therein of persons to whom the decedent stood *in loco parentis*. (*Bowron* v. *Kent*, 190 N. Y. 422,

434; *Kent* v. *Hopkins*, 86 Hun, 611, 613; *Thompson* v. *Carmichael*, 3 Sandf. Ch. 120, 129.) It follows that so far, therefore, as the provisions of the " thirteenth " item of the will refer to the testator's brother, Martin, the word " advancements " cannot be accorded its strict statutory meaning. It is notable, however, that the terms of the item are primarily directed to the " advancements " made to the children of the testator and that Martin is merely added thereto. It, therefore, becomes obvious that what the testator must have had in mind in respect of his children was that those payments which he made to them during life and which would fall within the primary conception of " advancements " had he died intestate, should not be considered as payments on account of the distributive shares which he had provided for them in the will and which were in substitution for the shares which they would have received had no will been made. If this be so, then the conjunction of the identical provision in respect of Martin indicates a like intent so far as he is concerned.

The next inquiry concerns the characteristics of gifts to testator's children (and by reason of present analogy to Martin) which would be essential to cause them to be deemed " advancements " had the property of the decedent devolved in intestacy instead of pursuant to the terms of the will. So far as here pertinent it is to be noted that " an advancement is an irrevocable gift *in præsenti* of money or property." (*Matter of Farmers' Loan & Trust Co.*, 181 App. Div. 642, 646.) This essential characteristic of gift is one of the main features which distinguishes an advancement from a loan with the result that when the circumstances of the transaction demonstrate an intention for repayment by the recipient it cannot be deemed an advancement. (*Bruce* v. *Grisccm*, 9 Hun, 280, 282; affd., 70 N. Y. 612; *Matter of Bennington*, 67 Misc. 363, 364.)

In the present instance the original transaction involved the giving by Martin to the decedent of an instrument signed by the former which read, " Four months after date I promise to pay to the order of Louis Singer " a specified sum at an identified place. On each maturity date this unequivocal promise of payment was renewed. It follows, therefore, that the parties emphatically negatived any idea that the transaction was to be viewed as a gift, wherefore it cannot be deemed an advancement within the terms of the will and the usual rule becomes applicable that this obligation of the legatee is to be set off against his legacy. (*Smith* v. *Kearney*, 2 Barb. Ch. 533, 547, 549; *Matter of Flint*, 120 Misc. 230, 232; affd., 206 App. Div. 788; *Clapp* v. *Meserole*, 1 Abb. Ct. App. Dec. 362, 365; *Ferris* v. *Burrows*, 34 Hun, 104, 107; affd., 99 N. Y. 616; *Matter of James*, 149 Misc. 135, 136.)

Enter decree on notice in conformity herewith.