In the Matter of the Estate of MORRIS WAX, Deceased.

Surrogate's Court, Kings County, December 29, 1933.

*Arthur D. Herrick*, for the administratrix.

*John P. Carroll*, petitioner, in person.

WINGATE, S.   This is an application to punish an administratrix for contempt for failure to make a payment directed by the decree settling her accounts.   This decree charged the accountant with the sum of $4,493.85, directed that she retain $184.85 for her commissions and pay $794.50 to the special guardian, $53.10 to a stenographer, $350 to the referee, $1,037.14 to the general guardian of her infant child, $1,037.13 to an adult son, and a like sum to herself.

The order to show cause is based on the failure to pay the $350 sum awarded to the referee.   The affidavit upon which it is based shows the compliance with the usual statutory prerequisites to the relief sought, including due demand for payment on June 27, 1933, and failure to pay.

Respondent's answer, so far as remotely pertinent, alleges merely her indigent circumstances.

It is familiar history to all students of the common law that one of its most serious early defects was the authority which it gave to imprison for debt.   Not only legal, but general literature contains many examples of the harsh effects of this practice.   " It was a system of great severity, fruitful of oppression; and its abolition was demanded by public sentiment, influenced by the

growth of more just and humane views of the respective rights of creditors and their debtors." (*Hathaway* v. *Johnson*, 55 N. Y. 93, 95.)

In consequence, an act was passed by the New York Legislature on April 26, 1831, " to abolish imprisonment for debt and to punish fraudulent debtors." The title of the statute correctly mirrored its effect, which was fully responsive to the public sentiment then and still existing.

While imprisonment of one whose sole fault lay in his misfortune was repugnant to the popular ideas of justice, such treatment of persons guilty of active wrong in the incurring of obligations did not offend the common conception of propriety, with the result that to such a like immunity was not accorded. " The legislature excluded from the benefit of the act fraudulent debtors, by subjecting them to arrest in an action to recover the debt, and to commitment ' as other prisoners, on criminal process ' until they procured their discharge in the manner provided by the act (§ 11)." (*Hathaway* v. *Johnson, supra.*) This policy has continued to the present day and similar enactments are now effective in sections 826 and 827 of the Civil Practice Act. If these provisions be scrutinized, it will be seen that emphasis is placed upon " misconduct or neglect in office," " fraud or deceit " and " conversion or misapplication of property."

These and similar " statutes authorizing arrest and imprisonment for debt, although remedial in that they are designed to coerce, by means of the imprisonment, the payment of the creditor, are also regarded as penal." (*Hathaway* v. *Johnson, supra.*) They are designed to continue the common-law rules of body liability in respect to those persons who either with wrongful intent or by reason of grossly negligent acts furnishing a substantial equivalent, have inflicted injury upon others.

When the almost invariable subject-matter of the jurisdiction of Surrogates' Courts is recalled, it will be obvious that section 84 of the Surrogate's Court Act authorizing imprisonment through the medium of proceedings for contempt, is *in pari materia* with the statutes just considered. The decrees of the surrogate, in the vastly preponderant majority of instances, have to do with trust funds in respect to which their custodians, whether executors, administrators, guardians or trustees, owe the highest conceivable type of fiduciary obligation. It is indeed extremely rare that a decree in this court directs the payment of a sum of money except to the extent of such a fund either actually in the hands of the fiduciary or which would have been but for his severely censurable misconduct.

It has ever been the policy of the law, in reflection of the popular sentiment, to hold fiduciaries, dealing as they do with the property of others, to an extremely high standard of conduct. "A trustee is held to something stricter than the morals of the market-place. Not honesty alone, but the punctilio of an honor the most sensitive, is then the standard of behavior. As to this there has developed a tradition that is unbending and inveterate. Uncompromising rigidity has been the attitude of courts of equity when petitioned to undermine the rule of undivided loyalty by the ' disintegrating erosion ' of particular exceptions. * * * Only thus has the level of conduct for fiduciaries been kept at a level higher than that trodden by the crowd. It will not consciously be lowered by any judgment of this court." (CARDOZO, Ch. J., in *Meinhard* v. *Salmon*, 249 N. Y. 458, 464.)

It follows that in the vast majority of instances the recoveries here directed come within that portion of the age-old principle of imprisonment which, because of its salutary effect upon those accepting a most confidential relation in respect to the property of others, has been continued in our law. This reason for the rule defines its extent and limitations. If the recovery allowed is solely that of costs, nniversally imposed in all courts upon an unsuccessful litigant, no moral obloquy attaches to him in respect to the indebtedness, and consequently imprisonment is improper and unauthorized. This was decided and all that was decided in the cases in which application of the remedy under section 84 or its predecessors has been denied. (*Matter of Humfreville*, 154 N. Y. 115, 120; *Matter of Banning*, 108 App. Div. 12, 13; *Matter of Grant*, 130 id. 706, 707.)

The distinction lies in the source of the payment of the debt. If the violation of the direction for payment involves merely the failure to satisfy an ordinary debt, punishment by incarceration will not be imposed, but if it amounts to a violation of basic fiduciary duty and misapplication of trust funds, this remedy is available. The fiduciary is a trustee primarily for those holding claims for funeral and administration expenses, secondarily for creditors, and, finally, for distributees. (Surr. Ct. Act, §§ 212, 216, 222, 285; *Matter of McCafferty*, 147 Misc. 179, 202; *Matter of Smallman*, 138 id. 889, 910, 911.) In so far as a surrogate's decree directs payments to the extent of funds which are or should be in the hands of the fiduciary for any of these purposes, it involves merely a particular instruction in respect to a legally imposed trust duty, a violation of which amounts to embezzlement or misapplication of the trust fund. Where, however, a payment is directed to be made by an individual as such, as for personally imposed costs,

this condition does not apply, the payment bears no relation to the fund and the obligation of the unsuccessful litigant is an ordinary personal debt enforcible by execution only.

It is primary that disobedience of a decretal direction to pay a legacy is punishable as a contempt. (*Matter of Holmes,* 79 App. Div. 267, 268; affd., 176 N. Y. 604.) (See, also, *Matter of Snyder,* 103 N. Y. 178, 181.) As hereinbefore noted, the fiduciary owes a prior duty to pay expenses of administration which may include such items as allowances to special guardians, referees, commissions, etc. It would, therefore, appear to be an *a fortiori* matter that the disobedience of a direction to pay these sums to the extent of the fund with which the fiduciary is charged is punishable in like manner. (*Matter of Kurtzman,* 2 N. Y. St. Repr. 655; reported by memorandum only, 41 Hun, 641; *Gillies* v. *Kreuder,* 1 Dem. 349.) (See, also, *Matter of Snyder,* 34 Hun, 302; *Matter of Hurd,* 6 Misc. 171; *Attorney-General* v. *Continental Ins. Co.,* 93 N. Y. 45, 47.) Cases arising in other courts in which conditions basicly different from those prevailing in the Surrogate's Court are encountered are worthless as precedents in this connection.

The only defense of the respondent to this application other than the questioning of the propriety of punishment for failure to pay the sort of obligation possessed by the applicant, is her alleged lack of assets. This is insufficient at this time, although it might form the basis of a subsequent application for release after incarceration. (*Matter of Garrity,* 149 Misc. 180, 181, and cases cited.)

The provision of section 84 of the Surrogate's Court Act to the effect that disobedience of the court's direction " *may* " be punished by commitment for contempt is somewhat ambiguous as possibly connoting a discretion in the court to refuse such relief as a matter of grace. Unfortunately this phase of the subject seems never to have been passed upon in this connection. Since, however, as this court noted in *Matter of Cooke* (148 Misc. 768, 771), this variety of contempt proceeding is in reality merely a civil remedy, the more logical course appears to be to construe the permission as applying only to the creditor, making it possible for him, at his election, to invoke the remedy upon a demonstration of the statutory prerequisites. (*Livingston* v. *Swift,* 23 How. Pr. 1, 3.) If, however, any discretion exists in the court to refuse the remedy, it would unquestionably be merely a judicial discretion as in alimony cases (*Thompson* v. *Thompson,* 197 App. Div. 228, 229), which, under the facts of the case at bar, the court would exercise adversely to the respondent.

It follows that the application must be granted.

Proceed accordingly.