In the Matter of the Estate of HARRY MELZAK, Deceased.

Surrogate's Court, Kings County, November 28, 1934.

*Jacob Stein*, for Miriam Melzak.

*Edward P. Shanley*, for the Female Institution of Visitation.

*Clarence S. Woodman*, special guardian for Joan Melzak, infant.

WINGATE, S. On October 11, 1933, the present administratrix filed her account with a petition for its judicial settlement. It disclosed the receipt of gross assets aggregating $2,147.45 from which disbursements totaling $736.02 had been made, leaving a net estate of $1,411.43. The demonstrated disbursements were $24.69 for bond premiums, $461.14 for attorney's fees and $250.10 for funeral expenses.

In spite of the fact that the time for presentation of claims had long since expired and all presented demands had been liquidated, the accountant, as an extra measure of precaution and good faith, set forth in Schedule C of her account the facts respecting a possible contingent claim on a bond and mortgage held by the Female Institution of the Visitation which organization had filed no proof of claim, or otherwise complied with the legal prerequisites for consideration of its rights as prescribed by law. (*Matter of Weissman*, 140 Misc. 360, 362, 363.)

The citation issued upon the prayer of the administratrix was in usual form, addressed to this organization, to the sole statutory distributee and to the surety, and after the usual recitals read: " Now, therefore, you and each of you are hereby cited to show cause before our Surrogate's Court of the County of Kings at the Hall of Records in the County of Kings, on the 24th day of October, 1933, at 9:30 o'clock in the forenoon, why such settlement should not be had." This process was attested in the name of the surrogate.

Upon being thus kindly aroused from its somnolent state, the holder of the mortgage appeared on the return day of the citation, and pursuant to consent then obtained filed " objections " to the account three days later, namely, on October 27, 1933. These " objections " consisted, however, merely of the extremely tardy assertion of its contingent claim by reason of holding of a mortgage extension agreement, signed by the decedent, and the prayer that the accounts be not judicially approved until a sum had been set aside to provide for the possible liability of the estate thereunder. As a strict matter of law, it seems probable that the document thus filed was not properly classifiable as an objection at all, but merely as an extremely belated presentation of a contingent claim.

However this may be, the court, in view of the obvious desire of the accountant to accord full protection to the rights of the claimant

despite its obvious and unexplained laches, rendered its decision adjuring diligence on the claimant in the fixation of its claim and providing in default thereof that distribution should be made without any reservation of assets on its account.

Thus admonished, the claimant, about a month later, instituted an action of foreclosure in which answers were filed on behalf of the administratrix and the infant sole distributee. After some negotiations, these answers were withdrawn upon the execution of a stipulation by the mortgagee providing that the estate should not be liable upon any deficiency judgment in excess of $1,050. As a result of the withdrawal of the answers, a deficiency judgment of $1,732.33 was entered on default.

Thereafter, a supplementary affidavit was filed in this court by the administratrix showing the receipt of sixty-one dollars and sixteen cents additional interest on savings account, and the disbursement of one hundred dollars for a grave marker for the decedent, twenty dollars for additional bond premium and seventy-five dollars for legal expenses and disbursements, the last item of disbursement being subsequently withdrawn.

On October 31, 1934, the attorney for the claimant filed a paper purporting to be " supplemental and amended objections " in which he seeks to raise objections to the attorney's fees aggregating $461.14 included in the original account and insists upon the allowance of the entire deficiency judgment of $1,732.33.

To cap the climax, a further " supplemental affidavit " was filed on behalf of this claimant on November 22, 1934, in which it is sought to surcharge the administratrix " in the sum of not less than $1,000 " by reason of the fact that she failed to take possession of and collect rents from the mortgaged premises which she had admittedly abandoned as a worthless asset.

Had the claimant deliberately planned to adopt a series of positions presenting a minimum of appeal to equitable consideration, it is doubtful whether it could have succeeded more completely. Had it not been for the somewhat unusual consideration and conscientiousness of the administratrix, its laches in the presentation of its contingent claim would have resulted in a loss of all rights of every nature against the estate. After obtaining the advantage of the withdrawal of all opposition in the foreclosure action it now attempts to repudiate the contractual obligation incurred in its procurement. Finally, not content with absorbing substantially the entire inheritance of the infant sole distributee, it seeks to inflict a monumental personal injury upon the good Samaritan whose kindly offices alone made it possible for it to share in the estate assets at all.

Even were the agreement limiting the amount of respondent's claim to $1,050 merely a " stipulation " as it is treated by the parties, it would unquestionably be binding upon them, since " all stipulations made by parties for the government of their conduct, or the control of their rights, in the trial of a cause, or the conduct of a litigation, are enforced by the courts." (*Matter of N. Y., L. & W. R. R. Co.*, 98 N. Y. 447, 453.) (See, also, *Bowers* v. *Durant*, 43 Hun, 348, 351; *Cowenhoven* v. *Ball*, 118 N. Y. 231, 236; *Randall & Sons, Inc.*, v. *Garfield Worsted Mills*, 178 App. Div. 196, 199; *Werner* v. *Werner*, 153 id. 719, 723; *Cohn* v. *Cohn*, 120 Misc. 731, 732.) It read that the claim of respondent against this estate " is settled and allowed in the sum of $1,050." The inevitable connotation of these words was that the parties had agreed upon this sum as the total obligation of the estate to the claimant in this regard.

As a matter of fact, however, it has been demonstrated that this engagement was more than a stipulation. It was a contract upon a valid consideration moving from the administratrix, in that it contemplated and induced the withdrawal by her of her answer in the foreclosure action, which consideration became executed by her performance of the act. Whether or not her defense was well founded is quite beside the point. She possessed a legal right to defend and surrendered this right in return for the agreement of the claimant limiting its claim. No inequitable conduct warranting a rescission of the contract has been demonstrated; wherefore, the respondent is bound by its terms.

The next question for consideration relates to the effectiveness of the " supplemental and amended objections " filed a year and seven days after the return day of the citation and of the " supplemental affidavit " submitted twenty-two days subsequently.

The only pertinent provision of the Surrogate's Court Act respecting the trial of a proceeding for the judicial settlement of the account of a testamentary fiduciary is contained in section 263, and reads: " On the return of a citation, issued as prescribed in the last section, the surrogate must take the account, and hear the allegations and proofs of the parties, respecting the same."

This provision is a substantial continuance of the similar enactment contained in the Revised Statutes and which has been in force ever since.

Upon this extremely general foundation, a well-established structure of practice has been erected by the process of judicial utterance. Typical of these pronouncements is that found in *Matter of Hart* (60 Hun, 516, 517): " In these proceedings the account and the objections thereto form the pleadings; and the objector to an account is as much bound to set up in such objections any claims

which he proposes to make against the administrator as the defendant in an action is bound to set up in his answer any claims which he proposes to urge against the plaintiff." (To like effect see *Matter of Sloane*, 135 App. Div. 703; *Matter of Heuser*, 87 Hun, 262, 266; *Matter of Brady*, 111 Misc. 492, 500.)

Since the objections to the account in reality constitute the answer of the objecting party, it is obvious that the usual rules of pleading apply to them, and that they must be stated " in the form of distinct and specific allegations " (*Bainbridge* v. *McCullough*, 1 Hun, 488), and that it is only in respect to matters so raised that any triable issue will exist. (*Matter of Gilman*, 2 Con. 78; *Matter of Bielby*, 91 Misc. 353, 363; *Matter of Sloane*, 135 App. Div. 705.) Conversely, no issue is raised in respect to a matter concerning which an objection is not interposed, and it cannot be made a basis of surcharge. (*Matter of Weston*, 91 N. Y. 502, 513; *Matter of Gilman*, 2 Con. 78.)

No authority has been found which passes directly on the question of the time when an objection must be interposed. This is not remarkable in view of the language of section 263 of the Surrogate's Court Act, above quoted, which provides " *on the return of a citation*," for the hearing of " the allegations and proofs of the parties." The fact that in actual practice the accounts of the parties are frequently not actually adjusted at once on the return day is wholly immaterial in this connection. This is due solely to the fact usually existing that other cases are entitled to preference in hearing by reason of prior institution. Where such condition does not exist, the express mandate of the statute implies an immediate adjudication of the issues. Since the only issues for adjudication are those raised by objections, it follows that it is the obligation of any person desiring to raise such an issue to do so " on the return of a citation."

This result is further substantiated by the direct mandate of the court as contained in the language of the citation itself. This summons the respondents " to show cause " before the court on a specified day and at a designated time " why such settlement should not be had." There is no reason for construing this as meaning other than what it expressly states, since it is an exercise of the power expressly granted to the court by subdivision 1 of section 20 of the Surrogate's Court Act.

Any respondent who fails to obey this express mandate of the court is in default and is not entitled to be heard except upon an application made and granted to open his default.

Since every item and allegation of the account tenders a potential issue which is joined only when an objection is expressly interposed thereto, it follows that. strictly speaking, there can be no such thing

as a partial default in answer. Every default is complete as to each item or allegation to which no objection is interposed, and as to it the account stands proved *pro confesso* except in as far as it may be patently contrary to law.

It follows, therefore, that if a respondent, after the expiration of the time within which objection to any item is a matter of right, desires to raise an issue in respect to any item of the account to which timely objection has not been interposed, he is under obligation to adopt the same procedure required of any party to an action who has suffered a default, namely, to apply for leave to come in and defend (*Boughton* v. *Flint*, 74 N. Y. 476, 486), which leave is a matter of judicial discretion (*Matter of Turfler*, 78 Hun, 258, 260), subject to denial or to grant on terms (*Matter of Turfler, supra*, 258, 259).

In the case at bar no such application was made, and on the circumstances disclosed there is small probability that it would have been granted. The so-called " supplemental and amended objections " and the " supplemental affidavit " are, therefore, no proper part of the record.

The administratrix is chargeable with gross assets aggregating $2,208.61, and is to be credited with the disbursements for funeral and administration expenses aggregating $736.02 shown in her original account, and for the $100 for a grave marker, which is a proper administrative disbursement (*Matter of Ayvazian*, 153 Misc. 467), being a funeral expense (Surr. Ct. Act, § 314, subd. 3; *Matter of Smallman*, 138 Misc. 889, 893), and twenty dollars for additional bond premium, as set forth in her supplementary affidavit. This makes total deductions of $856.02 and leaves a net sum of $1,352.59 in her hands.

The attorney has petitioned for an allowance for services in connection with the settlement of the account and the court, in its discretion, will award him seventy-five dollars in this regard to include all services to and including the entry of the final decree.

The balance to the extent of $1,050, after deducting this payment and the commissions of the administratrix, will be paid over to the respondent, any overplus being payable to the statutory distributee.

Enter decree on notice accordingly.