In the Matter of the Estate of ANNIE GORDON, Also Known as ANNA GORDON, Deceased.

Surrogate's Court, Kings County, February 16, 1938.

*Philip F. Rosenberg* [*Albert A. Rapport* of counsel], for the petitioners, Tillie Rickerman and Sydney Farber, as administrators *c. t. a.*, accountants.

*Joseph Port*, for David Plotnick.

*M. Benjamin Baron*, for Sarah Plotnick, administratrix of Samuel Plotnick, legatee, objectant.

*Charles P. Goldberg*, attorney *pro se*, objectant.

*Jacob Lewis Gold*, for Bessie Goodman, as assignee of Samuel Gordon.

WINGATE, S. As is so frequently the case, the legal interest of the questions involved in this proceeding far transcends the comparatively insignificant monetary amounts involved in the determination.

The testatrix died in September, 1931, leaving a will, probated about two months later, by the terms of which the residue of her estate was given to her husband, Samuel Gordon, to two named brothers and a niece, in equal shares. The husband was named as executor and duly qualified as such. He filed an interim account in the fall of 1932 which was contested and resulted in a decree, dated July 26, 1933, by which, among other things, he was directed to pay the sum of $100 to the special guardian; $172.10 to Albert A. Rapport for costs; $586.55 to David Plotnick, and $255.47 to Tillie Rickerman, the latter two individuals being distributees.

Two mortgages and certain jewelry, carried at a valuation of $4,400, were directed to be made the subject of a future accounting.

The results thus attained were reached by means of surcharges of the accountant aggregating $1,442.30. The enumerated sums, payment of which was directed, were not paid, in consequence of which the executor was cited in contempt proceedings by Rapport and Plotnick, adjudged guilty thereof, fined the sum of $758.65, the aggregate of the amounts directed to be paid them, and committed to jail upon his default in payment. He remained incarcerated from November 6, 1933, until October 31, 1934.

In the interval between his incarceration and release, his letters were revoked, the present accountants were appointed administrators *c. t. a.*, and he was directed to surrender to them all assets in his hands. Also, pending his release, he executed and delivered to one Bessie Goodman a purported assignment of his distributive share or interest in the estate which was duly recorded in this court on May 10, 1934.

In the latter part of October, 1934, he applied to this court for release from confinement. His petition alleged his inability to pay the amount of the fine, asserted that his only property was his distributive share in the assets of the estate in the hands of the administrators *c. t. a.*, subject to the Goodman assignment, and offered to assign to the prosecuting creditors under the decree so much of his distributive share as would suffice to satisfy his obligations to them. On the demonstration of this petition the court ordered his discharge from custody upon a showing of his compliance with his offer to make such assignment. It is significant, however, that the order in this regard recited the appearances of " Charles P. Goldberg, Esq., attorney for said Samuel Gordon, in support of this application, and Philip F. Rosenberg, Esq., attorney for Sidney Farber, (attorney-in-fact for David Plotnick) and George Rachlin, Esquire (attorney-in-fact for Albert A. Rapport) *in opposition* thereto." (Italics not in original.)

The order was consented to by the representatives of the parties who had opposed its grant, but *only as to form*.

On November 8, 1934, the deposed executor made a further assignment of his interest in the estate to the extent of $150 to his attorney, Charles P. Goldberg, which assignment was duly recorded in this court on June 8, 1936.

It was conceded on the hearing that none of the noted sums which the deposed executor had been directed to pay by the decree of July 26, 1933, had been paid by him. It appeared, however, that the administrators *c. t. a.* had paid to Albert Rapport the sum of $170.10 in satisfaction of his decretal recovery of $172.10. This

payment was duly set forth in Schedule C-1 of the account and the fact of its making or propriety were not made the subject of objection by any party to the present proceeding. In spite of this fact, the referee has recommended that the accountants shall be surcharged therefor. This recommendation cannot be accepted.

One of the time-honored principles of estate accounting is that no issue is raised in respect of any matter contained in an account to which no objection is interposed, and that it cannot be made the basis of a surcharge, being established *pro confesso* as correct and proper against all non-objecting respondents. (*Matter of Weston*, 91 N. Y. 502, 513; *Matter of Brady*, 155 Misc. 242, 245; affd., 246 App. Div. 619; *Matter of Gilman*, 2 Con. 78; *Matter of Melzak*, 153 Misc. 600, 604; *Matter of Ayvazian*, Id. 467, 476; *Matter of Kananack*, 155 id. 35, 37; *Matter of Thaler*, 161 id. 615, 617.) It follows that any questions concerning the making and propriety of this payment by the administrators *c. t. a.* were removed from the realm of controversy before the matter was submitted to the referee and he was unauthorized to determine to be improper a potentially controversial act, duly reflected in the account, which the respondents, by their failure to object thereto, have admitted to have been proper.

Pursuant to stipulations on the hearing it was agreed that the account should be surcharged in the sum of $41.25 and that all other objections theretofore interposed should be withdrawn except those relating to the manner of distribution of the remainder interest of Samuel Gordon under the will.

Approaching the consideration of the identity of the persons who are entitled to receive the one-fourth of the residue dedicated by the will to the former executor, the first question for determination concerns the relative rights of the individuals specified in the decree as entitled to receive indicated sums, and Bessie Goodman, the person to whom the removed executor attempted to make a voluntary assignment of a portion of his distributive share in the estate, in the spring of 1934 when he was in durance vile by reason of his failure to comply with the decretal directions.

Whereas this precise question is one of rare occurrence, the law on the subject was irrevocably settled, so far as this court is presently concerned, by the direct decision of the Court of Appeals in *Clapp* v. *Meserole* (1 Abb. Ct. App. Dec. 362). In that case William and Stephen Richardson were legatees and qualified as executors under their father's will. Some years later, and while the settlement of the estate was still pending, they purported to assign their interests in the estate. On their subsequent accounting they were found to be indebted to the estate for a deficiency on the foreclosure of a mortgage made to the testator in his lifetime. A decree was made

holding each liable to the estate in specified sums and directing distribution to other legatees, but awarding them nothing. The directed sums were not paid and the executors were removed and an administrator *c. t. a.* appointed. The surrogate decided that the holder of the assignment was not entitled to any portion of the sum in the hands of the administrator *c. t. a.* for distribution " as Stephen and William Richardson were indebted to the estate for more than the amount of their shares, which they had assigned to Clapp " (p. 364).

In affirming this determination, the Court of Appeals said (at p. 368): " Being both executors and legatees, the realization of their legacies depended upon the faithful performance of the trust, and it was not possible for the legatees to separate the interest from the duty. They could not convey away the former and then waste the assets with which it should have been paid. The duty which attached to the legacy in the hands of the legatees, followed it into the hands of the appellant."

This enunciation of the principles has never been modified by the Court of Appeals. On the contrary, in *Deobold* v. *Opperman* (111 N. Y. 531, 539), it is said: " The beneficiaries of the estate * * * became, under the theory of the law, entitled not only to the security afforded by the bond, but also to that of the funds of the estate remaining in the hands of the administratrix * * *. It would be contrary to the policy of the law to allow an administrator, at the outset of his administration, by contract, to place the funds of the estate beyond the reach of the court, and irreclaimable until after all the duties of administration have been performed by the administrator."

This statement has been cited and applied in *Warren* v. *Union Bank of Rochester* (157 N. Y. 259, 268) and in *Dutcher* v. *Dutcher* (88 Hun, 221, 225). (See, also, *Central Trust Co.* v. *West India Imp. Co.*, 169 N. Y. 314, 325.)

The entire subject was painstakingly reviewed by Surrogate TAYLOR in *Matter of Shanaburgh* (154 Misc. 559), who, in addition to the authorities hereinbefore noted, cites consonant precedents from other jurisdictions.

The only possible discordant note in the even harmony of decisions is found in *Muller* v. *National Surety Co.* (91 Misc. 544), which was decided by the Appellate Term of this Department and affirmed without opinion (172 App. Div. 966). It is conceivable that this decision may be distinguished on the facts; if not, it must be rejected as a binding precedent by reason of the clear opposing statement of pertinent principles by the Court of Appeals.

It follows, on the facts of this case, that the persons to whom payments were directed to be made by the decree of July, 1933, are *prima facie* entitled to preference over Bessie Goodman, the assignee. The rights which she received by virtue of her assignment could be no greater than those which her assignor possessed, and these were incumbered by a lien in favor of the persons to whom he was indebted by reason of acts in his fiduciary capacity.

Whereas the learned referee, Cyrus S. Jullien, Esq., has correctly recognized this general principle, he has, in his decision, differentiated between the rights of Rapport and Plotnick, who were the active parties in the contempt proceeding, and the special guardian and Tillie Rickerman, who were not, holding that the former assented to a waiver of their prior rights in the legacy by reason of the assignment by Samuel Gordon which was imposed as a condition on his release from incarceration. In the opinion of the court, the learned referee overlooked two important considerations in the attainment of this result. The first is that a proceeding for punishment for a civil contempt is merely an additional remedy available in a limited variety of cases for enforcement of a judicial pronouncement. (*Matter of Wax*, 149 Misc. 851, 854; *Matter of Kananack*, 155 id. 35, 40.) The failure of one to whom it is available to invoke it, or its abandonment after invocation, cannot be deemed to impair or vary the basic rights for the attempted enforcement of which it is available, in the absence of a clear express waiver of such rights.

The court has searched the testimony and record in vain for any indication of any such express waiver on the part of Rapport or Plotnick and, therefore, assumes that the determination of the referee must be based upon an implication of waiver resulting from the release of Gordon from incarceration and his assignment to Rapport and Plotnick pursuant to the order made in that regard. The difficulty here encountered is the fact that such disposition of the application for release, as is clearly demonstrated by the recitals of the order itself, was made in face of opposition by Rapport and Plotnick, and their only assent thereto was to the " form " of the order, implying no assent to the determination made against their protest, but amounting merely to an enforced acquiescence in the entry of an order properly reflecting the decision of the court.

Nor can it be said that their acceptance and filing of the assignment, if these events actually occurred, of which record proof has escaped the court, may be construed as any voluntary waiver or relinquishment of their rights. Any acts which they may have performed in this connection were colored by the judicial compulsion of the decision. Even if the contrary were to be held, however, there is, in the opinion of the court, insufficient demonstration in

the record to indicate that they voluntarily relinquished their existing rights and elected to accept the assignment in lieu and in satisfaction thereof. Rather would it appear, on this theory, if acquiescence in the determination were to be imputed to them, that they bartered the additional civil remedy of incarceration for an added security, which, worthless as it might be, was all which the deposed executor had to offer.

It is accordingly the conclusion of the court that the release of Gordon from incarceration and the concomitant and subsequent events in that connection were wholly ineffective to impair the previously existing preferred rights of Rapport and Plotnick to solution of their claims from Gordon's distributive share.

It follows, therefore, that as a primary matter the order of priority of the distributees of Gordon's share would be the special guardian, Rapport, Plotnick and Tillie Rickerman, on a parity and *pro rata*, with any overplus payable to Bessie Goodman, Gordon, himself, in that order.

As hereinbefore noted, however, the administrators *c. t. a.* have, without objection from any one, paid Rapport $170.10 in satisfaction of his claim. Obviously this must be construed as an uncontested advance on account of Gordon's distributive share, in like manner as if it had been made to him, had he been entitled to receive it.

The composite result will, therefore, be that the distributive share of Gordon will be computed on the basis of the assets presently to be distributed, plus such sum of $170.10. From the amount so found will then be deducted this $170.10. The remainder will be paid *pro rata* to the special guardian, David Plotnick and Tillie Rickerman to the extent of their claims, with interest at six per cent thereon from July 26, 1933, to the date of payment. If any balance remains, it will be paid to Bessie Goodman to the extent of her claim, with interest; the further overplus, if any, being paid to Goldberg and Gordon in order.

Except in so far as expressly modified hereby, the report of the learned referee will be confirmed.

Enter decree on notice in conformity herewith.