In the Matter of the Estate of JAMES J. SULLIVAN, Deceased.

Surrogate's Court, Kings County, November 7, 1941.

*Homer I. Harris* and *Samuel L. Greenberg,* for Mary C. Sullivan as administratrix, etc., of James J. Sullivan, deceased, petitioner.

*James E. Denning,* for Martin T. Manton, respondent.

WINGATE, S. James J. Sullivan died on December 20, 1935. His will was admitted to probate on January 31, 1936, on which date letters executory were issued to Martin T. Manton and Edward W. Sullivan, the executors therein named. The beneficiaries under the document were the widow, a brother and a sister of the testator.

In 1938, following the institution of a compulsory proceeding, the executors filed purported accounts of their transactions, to which various objections were interposed. Among others these included one on behalf of the widow that the account failed " to include all the shares, common and preferred, of the National Cellulose Corporation, owned by decedent * * * and for which the executors are accountable." As amplified by a bill of particulars, the gravamen of the widow's objection in this regard was that the account failed to charge the executors with 1,867 shares of the preferred stock of the company in question in addition to the 35 shares thereof, accountability for which was admitted.

The issues in the proceeding were referred to Hon. Henry C. Turner, as referee, and various hearings were held before him between December 1, 1938, and October 15, 1940. On the latter date the trial before the referee was adjourned *sine die* and no further proceedings have taken place therein since that date. During the course of these hearings, a certain amount of testimony was adduced relating to the issue raised by the widow concerning the National Cellulose stock.

Subsequent to the date of the last hearing before the referee and on March 27, 1941, an order was made removing Martin T. Manton as executor and revoking his letters. This was followed by a petition by the other executor for leave to resign, which was filed on April 21, 1941. By order dated June 27, 1941, his resignation was accepted, his letters revoked and Mary C. Sullivan, the widow, was named as administratrix *c. t. a.* She duly qualified

as such. She never intervened in the pending accounting and was not made a party thereto in her official capacity.

On October 9, 1941, the administratrix, acting in her official capacity, instituted a proceeding in this court, under section 205 of the Surrogate's Court Act, against Martin T. Manton, the deposed executor, seeking an inquiry respecting 1,867 shares of National Cellulose Corporation stock alleged to have been obtained by the respondent from the decedent during the lifetime of the latter.

The answer of the respondent, in addition to formal denials, asserts that the decedent's right to the shares in question is an issue in the pending accounting and that in any event the decedent sold the shares during his lifetime and that they came indirectly into the personal ownership of the respondent during the lifetime of the decedent.

The respondent has now moved " for an order dismissing the petition herein, upon the ground that the petitioner's right to the property sought herein has been and is the subject of a pending proceeding before Referee Henry C. Turner, or, in the alternative, referring the subject matter of said petition to said Referee for such disposition as he may deem just and proper." It is this motion which is the subject of present consideration.

The first question for evaluation is the correctness of the assertion that " petitioner's right to the property sought * * * is the subject of " the proceeding before the referee. This is clearly not the fact. The present petitioner is the duly appointed administratrix of this estate. As such, it is her duty to reduce to her official custody all assets belonging to the decedent. (*Johnson* v. *Lawrence*, 95 N. Y. 154, 162, 163; *Matter of Clinton*, 12 App. Div. 132, 137; *Matter of Union Trust Co.*, 70 id. 5, 9.) This obligation relates not only to such assets as had come into the official possession of her removed predecessor in office but to any and all others which belonged to the decedent at the time of his death and which consequently should be included in the avails of the estate. It is an obligation in *rem* — respecting the concrete individual items of property themselves, and not for damages unless she elects to treat the retention, if demonstrated to be unlawful, as a conversion. In either event, the gravamen of the present proceeding of the administratrix is predicated on the asset item itself, and if she is successful therein, its result will be to alter the title to the shares of stock themselves, divesting that of the respondent and substituting that of the administratrix.

The purpose and result of an accounting proceeding are wholly different. There, the only subjects which are submitted for evalua-

tion are the acts or neglects of the accountant in the performance of his fiduciary duties in respect of his obligations to an individual objector. Each of the *cestuis que trustent* of his trust possesses certain rights which are defined by the will, the Statute of Distribution or other pertinent rules of law. The beneficiary possesses certain rights to *pro rata* participation in a given aggregate value of property and to be successful in his effort to surcharge the accountant, must make three demonstrations, namely, " first, that the value of the estate assets in his hands at the date of the account is less than it would have been except for certain events which transpired during the course of the administration; second, that such loss or decrease has injuriously affected the individual interest in the estate of the person by whom the objection has been interposed; and third, that such loss or decrease has occurred by reason of some improper act or omission in his capacity as such." (Butler, N. Y. Surrogate Law & Practice, § 2838.)

In the present situation, the last enumerated of these elements is the one of importance. A recovery, if received in the accounting, is ultimately predicated on the breach of duty of the fiduciary, and even if such default in performance is the failure of the accountant to reduce some asset properly a part of the estate, to his possession for the *pro tanto* benefit of the complaining *cestui*, this is merely a factual step in the ultimate demonstration of his violation of his obligations of office for which he will be compelled to respond in damages alone, and not by restitution of the article in question to the estate itself. Such a determination notoriously does not affect the title to the concrete asset, which is in some third party but would have been in the estate except for the culpable act or neglect of the accounting fiduciary. (*Matter of O'Flyn*, 174 Misc. 1025, 1026.)

The court is not to be understood to intimate that if the fiduciary actually retains the asset in his individual possession at the time his dereliction is established, he may not be compelled to make restitution in kind if the ends of justice will best be promoted in this manner. The point, however, is, that his essential obligation is a personal one, not one in *rem*, to make good the loss which the individual objector has sustained by his improper acts or neglects.

The correctness of this conception and the essential difference between the usual type of accounting surcharge and a physical recovery of the asset item withheld, is further demonstrated by the fact that the only reparation which will be decreed upon the sustaining of an objection to an account is the damage which has been suffered by the individual objector himself as a result of the improper conduct of the fiduciary. (*Matter of Ellensohn*, 258 App. Div. 891; *Matter of Dempsy*, 259 id. 1083, 1084.)

As to any person who fails to object to an account, its correctness is established *pro confesso* (*Matter of Weston*, 91 N. Y. 502, 513; *Matter of Brady*, 155 Misc. 242, 245; affd., 246 App. Div. 619; *Matter of Melzak*, 153 Misc. 600, 604), with the result that he is entitled to receive only his particular *pro rata* of the assets therein disclosed. A successful objector, however, receives in addition a sum equal to his *pro rata* of a sum equal to the value of the additional assets which would have been available for distribution had the conduct of the accountant measured up to the pertinent legal requirements. This, however, is his damages by reason of the misconduct of the fiduciary and not a *pro rata* of the asset initially omitted from the account. Were the effect of the sustaining of the objection to bring the additional assets physically into the estate, the result would be different, since then a non-objecting party would receive his *pro rata* thereof, or, in other words, a sum in addition to that which, according to his record admission, is all to which he is legally entitled.

It will, accordingly, be obvious that the purpose of, and possible relief in, the present discovery proceeding are both quite different from those of the accounting.

The vulnerability of the position of the respondent on the present motion does not, however, terminate at this point. He asserts that the " petitioner's right " is the subject of the accounting proceeding. The present petitioner is the administratrix *c. t. a.* The administratrix *c. t. a.*, as such, is not even a party to the accounting. The widow is, but it is elementary that a person in his individual capacity constitutes a totally different legal personality from that which he enjoys in his fiduciary status (*Pardee* v. *Mutual Benefit Life Ins. Co.*, 238 App. Div. 294, 296, 297; *Nagel* v. *Nagel*, 242 id. 845; *Matter of Sullivan*, 169 Misc. 16, 17; affd., 255 App. Div. 1008; *Matter of Ebbets*, 149 Misc. 260, 269; *Matter of Ferber*, Id. 840, 842; *Matter of Gomez*, 160 id. 503, 506; *Matter of Clark*, 166 id. 909, 915; *Matter of Smith*, 167 id. 95, 99; *Matter of McCabe*, 176 id. 286, 289), with the result that a judgment in an action or proceeding to which a fiduciary is a party only in a trust capacity, will not render the issues therein *res adjudicata* against him in his individual capacity or *vice versa*. (*Rathbone* v. *Hooney*, 58 N. Y. 463, 467; *Collins* v. *Hydorn*, 135 id. 320, 324, 325; *Leonard* v. *Pierce*, 182 id. 431, 432; *Matter of Schwarzmann*, 174 Misc. 834, 836. See, also, *Williams* v. *Fischlein*, 144 App. Div. 244, 245.)

It follows that the primary ground of the motion is without substance. The right of the " petitioner," namely, the administratrix, to the property sought is not the subject of a pending

proceeding before the referee. The only remotely relevant question there raised is the right *in personam* of a legally distinct individual to recover damages from the accountant by reason of his alleged breach of duty in failing to reduce this stock to his fiduciary possession.

The alternative relief sought on the motion remains for evaluation. It is that the subject-matter of the petition be submitted to the referee for decision. A preliminary objection to this procedure is that the present petitioner, the administratrix, is not a party to that proceeding and has evinced a reasonably vocal objection against the exercise of compulsion for her joinder. An even more substantial reason for denial of the application in this regard lies in the fact that the administratrix, presumably acting on competent advice, has selected another of the available and appropriate means afforded her by law for the performance of the obligation which she owes to the estate of reducing all of its assets to her fiduciary possession. That the results of the alternate methods of procedure will not be identical in the event of her success, has already been indicated. The methods of trial are also different. In the proceeding which she has elected to pursue, she may obtain a determination of the location of the title to the property by the verdict of a jury (*Matter of Comfort*, 234 App. Div. 19, 21; *Matter of Nutrizio*, 211 id. 8, 9), whereas in the accounting, this privilege would not be available. (*Matter of Boyle*, 242 N. Y. 342, 345; *Matter of Beare*, 122 Misc. 519, 520; affd., 214 App. Div. 723; *Matter of Stark*, 118 Misc. 240, 241; *Matter of Leary*, 175 id. 254, 257; *Matter of Fogel*, 176 id. 368, 369.)

The reason which motivated the selection of her remedy is wholly immaterial. She has selected one of those made available by law for the purpose and it is not a function of the court to exercise compulsion upon her to alter her choice.

It would, of course, be futile and conceivably embarrassing were the referee to attain one result in respect of the objection interposed to the account, and a diverse conclusion be reached in the discovery proceeding. It would, therefore, effect an agreeable cutting of the Gordian knot were the widow, in her individual capacity, to withdraw the relevant objection in the accounting and thus permit the referee to report on the remainder. Whether or not she will elect so to do is a question for her decision. If she shall not, the only available alternative would seem to be for the referee to withhold his report until the termination of the discovery proceeding.

For the reasons developed, the present motion will be denied, with costs.

Enter order on notice in conformity herewith.