In the Matter of the Application of THEODORE R. CARPENTER as Substituted Trustee under the Will of J. FAIRFIELD CARPENTER, Deceased, et al., Petitioners.

AMERICAN SURETY COMPANY OF NEW YORK, Respondent.

Surrogate's Court, Madison County, December 13, 1944.

*J. Theodore Cross* for petitioners.

*Alanson Fredericks* and *Arthur N. Gleason* for respondent.

CAMPBELL, S. This proceeding is pursuant to section 115-a of the Surrogate's Court Act to compel the surety to pay the

amount surcharged against the trustees by decree of this court made May 3, 1943, for the sum of $164,042.73. This sum is segregated as follows: (1) to Theodore Carpenter interest of remainder, $84,939.33; (2) interest, $67,476.67; and (3) to J. F. Carpenter, III, interest on principal, $11,626.73.

Petitioner, as administrator of the estate of J. Fairfield Carpenter, III, has made a separate application praying that summary judgment for the said sum of $11,626.73 with interest from May 3, 1943, be granted.

The surety urges that this claim is barred by the Statute of Limitations. I do not think the defense is available. (*Cohen* v. *Hymes*, 64 Hun 54; *Davis* v. *Crandall*, 101 N. Y. 311.)

There is sufficient evidence to find fraud and concealment by the trustees, which was not disclosed by the representatives prior to six years before the proceeding was commenced. (See *McCaw* v. *McCaw*, 182 Misc. 910.)

As to the interest of Theodore Carpenter the surety urges two principal reasons why it is not liable: (1) that it has been discharged from its obligation by written release and (2) that the trust was repudiated by the trustees, and, consequently, this claim is now barred by the ten-year Statute of Limitations.

On March 3, 1917, Theodore Carpenter executed and acknowledged a general release of any and all claims which he had or might have against the American Surety Company arising from the bond executed and filed with the Surrogate for the accountability of the trustees in this estate. Petitioner contends that this release was obtained by coercion, duress and fraud, also, that it is not under seal and without consideration.

The release was executed after the trustees, the mother and brother of petitioner, had dissipated the principal, in part, of the trust fund. The instrument was procured by Alphonzo E. Fitch, as attorney for the estate, and there is ample evidence that he was also the attorney for the surety company. Mr. Fitch did not refute the testimony offered by Theodore R. Carpenter as to what took place when the release was executed. Petitioner had just reached his majority. He was told that the fund was exhausted and that his mother and brother would be imprisoned if he did not discharge the surety by release. I exonerate Mr. Fitch from any intention to deceive as to the squandering of the estate but, nevertheless, this statement was made with the knowledge and approval of the trustees and constituted a fraud. Furthermore, I think the court must find that the seal was affixed after the instrument was signed and **executed by Theodore Carpenter, without his knowledge.**

As to duress: in *Adams* v. *Irving National Bank* (116 N. Y. 606), the court stated: " the rule is firmly established that in relation to husband and wife or parent and child each may avoid a contract induced and obtained by threats of imprisonment of the other, and it is of no consequence whether the threat is of a lawful or unlawful imprisonment."

The mother and brother were subject to prosecution for a felony at the time this release was executed. The time subsequently came when the matter was barred by the statute. (Code Crim. Pro., § 142.)

It is further contended that there was a continuing duress because the trustees could be imprisoned for contempt when the matter was brought before the court for an accounting; such would constitute civil contempt. (1 Butler on New York Surrogate Law and Practice, § 762; *Matter of Wax,* 149 Misc. 851; *Matter of Kananack,* 155 Misc. 35; *Matter of Gordon,* 166 Misc. 363–368.)

When the acts of the trustees developed to such a state that it only constituted a civil contempt, any threat of punishment did not amount to duress. (*Dunham* v. *Griswold,* 100 N. Y. 224; *Levy Leasing Co., Inc.,* v. *Siegel,* 230 N. Y. 634; *Lilienthal* v. *Bechtel Brewing Co.,* 118 App. Div. 205.)

Furthermore, this remedy of contempt is one available to a party to whom payment is directed to be made by the decree. No case has been called to my attention where a fiduciary has been punished upon the application of a surety.

Considering the release from another angle, it is my belief that it was procured by fraud combined with duress and without a seal or consideration. Such an instrument is void from its inception. (*Gleason* v. *Hamilton,* 138 N. Y. 353; *F. L. & T. Co.* v. *Siefke,* 144 N. Y. 354.)

No separate and independent action is necessary to set the release aside. (*Hanover Fire Ins. Co.* v. *Morse D. D. & R. Co.,* 270 N. Y. 86.)

Such an instrument is void for another reason. (*Strauss Linotyping Co.* v. *Schwalbe,* 159 App. Div. 347.)

In this view I conclude that the alleged release is not a bar to the relief sought by petitioner.

The other question is whether there was such a repudiation by the trustees as to start the running of the statute. Such is claimed to be the effect when the release was obtained and, further, by the execution of the so-called Utica trust or agreement, and other acts of the parties concerned. There is still a

serious question in mind as to whether or not the surety was timely in pleading the Statute of Limitations, since it did not object to the filing of the account by the trustees. However, since this court has held otherwise, and that decision was not appealed, I must determine the question in the light of that holding. This rule likewise applies to the contention made by the surety relative to certain credits that it claims should be allowed to it at this time. Again, I hold that the decree is binding. It was not appealed from and the question cannot be litigated again. (*Schuylkill Fuel Corp.* v. *Nieberg Realty Corp.*, 250 N. Y. 304; *Matter of Roche,* 259 N. Y. 458.)

Petitioner's interest in this trust was a contingent remainder. There could not be an absolute vesting until the death of the mother who had the life use. Her death occurred November 21, 1939.

The burden rests on the surety or fiduciary to prove the application of the Statute of Limitations. (*Matter of Walls,* 179 Misc. 924, 932; *Matter of Meyer,* 98 App. Div. 7.)

As long as there is a subsisting and continuing trust acknowledged or acted upon by the fiduciary the Statute does not run, but if the fiduciary denies the right of the *cestui que trust* and the possession of the property becomes adverse, lapse of time from such a period becomes a bar. (*Spallholz* v. *Sheldon,* 216 N. Y. 205; *Matter of Petition of Camp,* 126 N. Y. 377; *Matter of Jones,* 51 App. Div. 420; *Matter of Menahan,* 224 App. Div. 139, 144.)

A person obtaining possession of property as executor should not be permitted to acquire title thereto by failure to require him to account unless there is no avenue of escape from such inevitable result. (*Matter of Irvin,* 68 App. Div. 158, 162.)

A loss of a part of the fund is no repudiation where the beneficiaries' right to the corpus is not immediate. (*Matter of Petition of Camp, supra.*)

There is nothing in the record from which it can be found that the trustees asserted an adverse claim to the trust fund.

The attempt of the petitioner, Theodore Carpenter, to salvage the remaining fund by entering into the Utica trust agreement did not amount to a repudiation or create an estoppel. (2 Perry on Trusts and Trustees [7th ed.], § 850, p. 1452; *Boerum* v. *Schenck,* 41 N. Y. 182; *King* v. *Talbot,* 40 N. Y. 76.)

Full and complete knowledge must be brought to the attention of the *cestui que trust* in order to create an estoppel. (*Matter of Ryan,* 264 App. Div. 704, affd. 291 N. Y. 376.)

It was held in *Hitchcock* v. *Peaslee* (89 Hun 506) that where a life tenant dissipates the estate, the remainderman was not required to act until the termination of the life estate, the death of the life tenant.

It is conceded that we have here a contingent remainder, where there could not be an absolute vesting until the decease of Elizabeth T. E. Carpenter. It is true, however, that the petitioner was entitled to the income of his relative share from the time that he reached his majority. On this point there is much to be said for the surety's position that it was the duty of the beneficiary to act, but I have found no case, even where a beneficiary is entitled to income on a contingent remainder, that takes it out of the rule applying to contingent remainders. On this question I am giving the benefit of any doubt to the beneficiary.

In the light of all the facts, I hold that the surety has failed to meet the burden cast upon it in order to prove such a repudiation as would constitute an effective estoppel. Such a defense " only becomes available when the failure to assert the right has given rise to circumstances rendering it inequitable to permit the exercise of the right after a long lapse of time.'' (*Hydraulic Power Co.* v. *Pettebone-Cataract P. Co.*, 198 App. Div. 644, 653; *Matter of Ayvazian*, 153 Misc. 467.)

Mindful of the provisions of section 158 of the Civil Practice Act, nevertheless, here we have a paid surety that has resorted to various devices to avoid an accounting and escape its responsibilities. From the very beginning it relaxed and waived its requirements regarding the countersigning of checks, obtaining releases through duress and other means, remaining silent when its own accountants had revealed a shocking condition regarding the trust fund; seeking to take advantage of an unlawful attempt to reduce the bond. From the most favorable view, we must find that the conduct of the American Surety Company from the beginning of its obligation, encouraged and made possible the dissipating of this estate. If it should be found that the court is wrong in its findings, it would seem expedient that some method of procedure or remedy be established to hold a surety that acts from a commercial basis to a higher degree of responsibility.

The original bond is still in force unaffected by the attempt to reduce it. The court had no jurisdiction. There was no accounting. (7 Wait's New York Practice [4th ed.], pp. 100–120.)

In accordance herewith a decree may be presented directing the payment by the American Surety Company of the amounts heretofore set forth in addition to the amounts allowed to the respective attorneys appearing in the accounting proceedings.