In the Matter of the Accounting of GEORGE KOCH et al., as Executors of GEORGE W. KOCH, Deceased.

In the Matter of the Application of EDWARD E. BIANCO, as Referee, et al., Petitioners, to Compel EDYTHE F. KOCH, as Administratrix C. T. A. of the Estate of GEORGE W. KOCH, Deceased, Respondent, to Pay the Claims of Petitioners against the Estate of said GEORGE W. KOCH, Deceased.

Surrogate's Court, Bronx County, December 30, 1944.

*George J. Malinsky* for George Koch and another, former executors of George W. Koch, deceased.

*Harry Scheer* for respondent.

*Lewis Cook* for May K. Bladon, legatee.

*Aaron Hulnick* for petitioners.

*Edward F. Roehm,* special guardian.

HENDERSON, S. This is a motion to vacate and set aside a decree directing the former executors to pay a referee's fee and a claim for stenographic services rendered to the referee in the accounting proceedings, and to relieve such executors from their default in appearing in opposition to the application which terminated in the decree sought to be set aside.

The decedent herein died on the 7th day of February, 1941. Letters testamentary under his last will and testament were granted to his son and daughter, George Koch and Irene H. Gumaer.

The only persons interested in his estate are the decedent's children, George Koch, Irene H. Gumaer, Emma Wiesing, Florence Pieken, Walter L. Koch and May K. Bladon, each entitled to one seventh of the residuary estate; and decedent's grandchildren, Edythe F. Koch and Robert Koch, an infant, each entitled to one fourteenth of the residuary.

In March, 1942, proceedings to remove the executors were brought. Upon such proceedings, it was satisfactorily demonstrated that the decedent on March 12, 1940, accompanied by his son, George, and with the knowledge of Irene H. Gumaer, withdrew from his various savings bank accounts approximately $37,000. These moneys were not redeposited in any bank.

George Koch asserted in such proceedings that he had received $25,500 in cash as a gift and that he had no knowledge of what became of the balance.

No determination was made at that time as to whether or not a gift was made. The court found that the executors had endeavored to conceal the existence of the savings banks withdrawals and removed them.

Thereafter they filed their accounts, and in schedule K thereof, they set forth that the decedent withdrew from various banks the sum of $37,145.09; that on March 13, 1940, the decedent gave to George Koch, $25,500 as a gift *inter vivos;* and that as to the difference of $11,645.09 between the sum of $37,145.09 withdrawn and the gift of $25,500, the accountants received no part thereof and were without knowledge as to what disposition was made thereof by the decedent.

Objections thereto were filed by May Koch Bladon and Edythe F. Koch, and by the special guardian for Robert Koch.

Their main objections were concerned with the failure of the executors to charge themselves with the sum of $37,145.09, the amount of decedent's withdrawals.

The matter was referred to a referee who has filed a report wherein he found that the sum of $25,500 was a gift *inter vivos* to George Koch. He also recommended that the former executors be surcharged the sum of $11,645.09 with interest, the difference between the amount of the gift and the sums withdrawn by the decedent.

As a result of various motions made with respect to the aforesaid report, an order was made on June 30, 1943, modifying such report to the extent of reducing the amount of the gift from $25,500 to $25,000, and increasing the surcharge by $500 to the sum of $12,145.09. No decree has as yet been entered

judicially settling the accounts as affected by the aforesaid order.

Thereafter, upon an application of the referee and his stenographer, which application was consolidated with the pending accounting proceeding, an intermediate decree was entered on July 6, 1944, directing the former executors who defaulted upon such application, to pay to the referee and his stenographer the sum of $1,520.90.

It is this decree which is sought to be set aside by the former fiduciaries. The reasons assigned by them for this relief are that the fees and charges are properly payable out of the estate assets and not by the former executors personally; and that they do not possess sufficient estate assets to make the payments directed by the decree.

This court has by prior decisions (N. Y. L. J., April 30, 1943, p. 1682, col. 4; N. Y. L. J., Jan. 29, 1944, p. 389, col. 5) determined that the expenses of these proceedings shall be borne by the estate and not by the executors personally. The intermediate decree does not effect a modification of these prior decisions.

Any doubt as to the personal liability of the executors for these charges has been resolved by this court's denial of a motion brought for the express purpose of charging them with the expenses of the accounting. (N. Y. L. J., Dec. 21, 1944, p. 1788, col. 3.)

By section 79 of the Surrogate's Court Act,* the decree, which is within the direct language of the section, is conclusive evidence that there are estate assets in the hands of the former executors sufficient to satisfy the sums directed to be paid. The former executors, however, claim that they were not possessed of any available estate assets at the time of the entry of such decree. To substantiate this assertion, they show that on October 30, 1942, over a year prior to the entry of this decree on July 6, 1944, they had delivered to the administratrix c. t. a. the balance of property in their hands as shown in schedule G of their account. They also contend that they cannot be surcharged with any amount for the benefit of nonobjecting parties; that May Koch Bladon abandoned her objections to their account and that there are only two objectants, Edythe F. Koch and Robert Koch, each entitled to one fourteenth of the residuary estate. They claim therefore that the surcharge must be limited to the measure of damages suffered only by these two objectants by reason of

---

* Providing that a decree directing payment by an executor is, except upon an appeal therefrom, conclusive evidence that there are sufficient assets in his hands to satisfy the sum which the decree directs him to pay.— [REP.

the failure to report $12,145.09 as estate assets, after giving such former executors credit, first for the amounts due them for moneys which they advanced for the benefit of the estate, some of which were approved by the referee, and second, after computing and giving them credit for the amounts of the value of their interests in the residuary. Based upon this theory, the former executors show that one seventh of the surcharge with interest amounts to $2,125.34, and that after deducting their claims which were approved and the Federal estate tax of $421.12 upon the estate of Emma Koch, which this estate was obliged to pay, they would only have a balance of $81.98 in their hands payable to the estate. Furthermore, they assert a right to receive credit for the amounts of their interests in the residuary estate which will probably be more than $81.98, before computation can be made of the actual surcharge.

They argue that this conclusively demonstrates a lack of assets in their hands, and cite the following authorities for their contention. (*Matter of Roche*, 259 N. Y. 458; *Matter of Garvin*, 256 N. Y. 518; *Matter of Dempsy*, 259 App. Div. 1083; *Matter of Ellensohn*, 258 App. Div. 891; *Matter of De Vany*, 147 App. Div. 494, revd. 205 N. Y. 591; *Matter of Junkersfeld*, 244 App. Div. 260; *Matter of Sullivan*, 177 Misc. 570, revd. 264 App. Div. 65, which was revd. 289 N. Y. 323; *Matter of Gordon*, 166 Misc. 363; *Matter of Thaler*, 161 Misc. 615; *Matter of Young*, 156 Misc. 795; *Matter of Kananack*, 155 Misc. 35; *Matter of Ayvazian*, 153 Misc. 467; *Matter of Melzak*, 153 Misc. 600; *Matter of Stumpp*, 153 Misc. 92; *In Re Muller's Estate*, 49 N. Y. S. 2d 767; *In Re Reynold's Will*, 46 N. Y. S. 2d 367; *In Re Mattison's Will*, 17 N. Y. S. 2d, 735.)

Except for the cases of *Matter of Sullivan* (*supra*) and *In Re Muller's Estate* (*supra*) the issues in these cases clearly related to credits which were set up in the accounts of the various fiduciaries, which credits were reduced, after objections, only for the benefit of the objectants on the theory that as to the nonobjecting parties, the account is established *pro confesso* as correct and proper and the decree which is entered thereon is *res judicata* in any subsequent proceeding. The court in *In Re Muller's Estate* (*supra*) applied the the principle of the above cases to a situation where the fiduciary failed to account for certain sums of money appropriated to her own use and limited the surcharge to the damage suffered by the objectant.

In *Matter of Sullivan* (*supra*, pp. 572, 573) the widow of the decedent objected to the account of the executors for their failure

to charge themselves with certain shares of stock. While the accounting proceeding was pending, the executors' letters were revoked and the widow was appointed administratrix *c. t. a.* Thereafter, as such administratrix, she instituted a discovery proceeding against the deposed executor, seeking an inquiry respecting such shares of stock. A motion was made to dismiss the petition in the discovery proceeding on the ground that the petitioner's right to such stock " has been and is the subject of a pending proceeding * * *."

In determining such motion the court discussed the rights of nonobjectants to share in a recovery based upon the failure of a fiduciary to reduce some estate asset to his possession. While the rule of law stated by the court in this discussion was dictum. certain language in the opinion as a part of the discussion indicates, that if that court had this matter before it on the issue raised by the former executors, it would refuse to allow only a *pro tanto* liability. Such language is as follows: " The court is not to be understood to intimate that if the fiduciary actually retains the asset in his individual possession at the time his derelection is established, he may not be compelled to make restitution in kind if the ends of justice will best be promoted in this manner."

This. dictum seems to this court, to be the correct rule of law which should be applied in determining the liability of fiduciaries who have breached their trust as have the former executors herein.

While we are considering the application of this rule of law, it should be borne in mind that the Surrogates' Courts have always recognized a distinction between a case in which credits requested by a fiduciary in an account have been reduced, and one in which new assets have been brought into an estate after objection based thereon. This distinction has been recognized particularly in proceedings to fix attorneys' fees pursuant to section 231-a of the Surrogate's Court Act where compensation is requested for legal services out of the general estate on the theory that a benefit has been conferred as a result of successfully prosecuting an objection based on a failure to account for estate assets. (*Matter of Sielcken,* 176 Misc. 235, and cases cited therein.)

Furthermore, a decree judicially settling a fiduciary's account is not *res judicata* as to assets not specified therein (*Joseph* v. *Herzig,* 198 N. Y. 456, 461; *Matter of Schmidt,* 163 Misc. 610).

This court has expressed its reluctance to extend the principle of law laid down in the cases cited by the former executors to

the case at hand where it has found that the fiduciaries have perpetrated acts that amount to a theft of part of this estate. Moreover, because of the manner in which the issues were presented, the court is of the opinion that the rule of law asserted by the moving parties cannot be applied.

An examination of the petition of the former executors which prayed for the judicial settlement of their account contains this additional language in its prayer, "and that the court determine whether or not there was a valid gift inter vivos and whether or not the accountants are chargeable with the sum of $11,645.09 as set forth in schedule K."

In schedule K of their account, the executors requested the court to determine whether or not a gift had been made and "(2) are the accountants chargeable with the difference of $11,645.09 * * * ?"

The citation served upon all parties contained similar language.

It seems obvious that nothing more was necessary on the part of any of the other parties in order to raise issues with respect to these questions. The petition, account and citation notified all persons interested that such questions had been presented and were to be determined by the court. The filing of objections added nothing more to the presentation of these issues.

The residuary legatees who failed to file an answer, in effect joined in the prayer of the petition (*Matter of Brady*, 155 Misc. 242, 245, affd. 246 App. Div. 619), and thereby aligned themselves with the petitioners in seeking the relief prayed by the latter (*Matter of Thaler*, 161 Misc. 615, *supra*).

The executors were in effect asking for declaratory relief. Issuable facts were tendered to the court and the taking of proof would have been necessary to warrant the granting of such declaratory relief even though no specific objections had been filed.

The findings of the court upon the questions so presented must therefore be held to be the answers to questions presented by all parties.

Accordingly, it must be held that such former executors have sufficient assets in their hands to pay the amounts directed in the decree of July 6, 1944, and this motion must be denied.

Settle order.